**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**BARBARA MCCLAY**                                    **CIVIL ACTION NO.**

**VERSUS**                                                        **20-59-SDD-EWD**

**DG LOUISIANA, LLC**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 11, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**BARBARA MCCLAY**                                    **CIVIL ACTION NO.**

**VERSUS**                                            **20-59-SDD-EWD**

**DG LOUISIANA, LLC**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Renewed Motion to Remand on Jurisdictional Grounds ("Renewed Motion"),[1] filed by Barbara McClay ("Plaintiff"). The Motion is opposed by DG Louisiana, LLC ("Defendant").[2] As Defendant has failed to meet its burden of establishing the requisite amount in controversy, it is recommended[3] that the Motion be granted in part and that this action be remanded to the Eighteenth Judicial District Court, Parish of Iberville, State of Louisiana for lack of subject matter jurisdiction under 28 U.S.C. § 1332. To the extent any portion of Plaintiff's Renewed Motion may be construed as a request for an award of costs and attorney fees under 28 U.S.C. § 1447(c), it is recommended that such request be denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This is a civil action involving claims for damages allegedly sustained by Plaintiff as a result of a trip and fall that occurred on May 23, 2018.[4] Specifically, Plaintiff claims that she was "a guest walking on the premises of [Defendant] located at 4393 Hwy 1 South, Port Allen, LA 70767" when she "tripped and fell as a result of some unknown substance spilled upon the floor."[5] Plaintiff claims her fall caused "extremely painful and permanent injuries to her person."[6] On April

---

[1] R. Doc. 13.
[2] R. Doc. 14.
[3] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).
[4] R. Doc. 1-2.
[5] *Id*. at ¶¶ 2-3.
[6] *Id*. at ¶ 3.

1, 2019, Plaintiff filed a Petition for Damages ("Petition") against Defendant in the Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana.[7]

### *The Notice of Removal and Plaintiff's First Motion to Remand*

Defendant removed the case to this Court on January 29, 2020, asserting diversity jurisdiction under 28 U.S.C. § 1332.[8] Defendant alleged the parties are completely diverse because Plaintiff is a citizen of Louisiana and Defendant is a citizen of Tennessee.[9] As to amount in controversy, Defendant stated it is "clear" that Plaintiff's claims exceed the jurisdictional amount because of "the alleged injuries suffered by [P]laintiff and corresponding medical treatment," combined with Plaintiff's "refusal" to execute a stipulation that Plaintiff's claims do not exceed $75,000.[10]

Within days of removal, Plaintiff filed her first Motion to Remand ("First Motion").[11] In that motion, Plaintiff argued that Defendant's Notice of Removal was untimely because Defendant failed to remove the case within 30 days of service of Plaintiff's original Petition, from which Plaintiff argued it was "facially apparent" that her claims exceed $75,000.[12] According to Plaintiff, these allegations (that she suffered "extremely painful and permanent injuries, pain and suffering, mental anguish, loss wages, disability, and other damages"), coupled with her failure to include a La. Code Civ. P. art. 893(A) statement in the Petition that "her claim was less than the [federal] jurisdictional amount," put Defendant on notice that the case was immediately removable.[13]

---

[7] R. Doc. 1-2
[8] R. Doc. 1.
[9] *Id*. at ¶¶ II-IV.
[10] *Id*. at ¶VI(b)(1) – (10). Specifically, Defendant alleged that a "portion" of Plaintiff's medical records show (1) that Plaintiff complained of "low back pain, neck pain and left ankle pain," and (2) that she has been diagnosed with multiple cervical disc bulges and lumber disc bulge at L2-L3 and herniation at the L5-S1 level. *Id*.
[11] R. Doc. 2.
[12] R. Doc. 2-1.
[13] *Id*. at p. 2. Article 893(A) states, in part, "No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand. The prayer for relief shall be for such damages as are reasonable in the premises except that if a specific amount of damages is necessary to establish…the

A telephone conference was held with the parties on February 12, 2020 to discuss Plaintiff's First Motion. During the conference, the undersigned explained the Fifth Circuit standard to trigger the 30-day removal clock.[14] The parties requested some time to consider the First Motion and the Notice of Removal in light of the guidance provided,[15] and to discuss whether Plaintiff would execute a stipulation that her damages do not exceed $75,000.[16] The parties were given until February 21, 2020 to discuss these issues and to advise the Court on how they wish to proceed.[17] On February 21, 2020, Plaintiff filed a Motion to Withdraw the First Motion,[18] which was granted.[19]

### The Parties' Joint Status Report and Deficiencies in the Notice of Removal

On September 1, 2020, the parties participated in a second telephone conference to discuss a potential jurisdictional issue raised in their Joint Status Report.[20] The last sentence of the section of the status report regarding jurisdiction states, "As of yet, Defendant has not presented proof by a preponderance of evidence that the value of the case exceeds the jurisdictional threshold."[21] Notwithstanding that this argument was in contradiction to Plaintiff's argument in the First Motion

---

lack of jurisdiction of federal courts due to insufficiency of damages...a general allegation that the claim exceeds or is less than the requisite amount is required…" Despite Plaintiff's argument that the lack of an Article 893 allegation in her Petition should have put Defendant on notice that Plaintiff's claims exceeded the jurisdictional minimum under 28 U.S.C. § 1332, the language of Article 893 is clear—if a specific amount of damages is "necessary to establish…the lack of jurisdiction of federal courts due to insufficiency of damages," a plaintiff is "required" to include a "*general allegation that the claim exceeds or is less than the requisite amount*" in the prayer for relief. *Id*. (emphasis added).

[14] *See* R. Doc. 4, pp. 1-2 (discussing *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 399 (5th Cir. 2013); *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163; and related cases).

[15] *Id*. at p. 2.

[16] *Id*.

[17] *Id*. at pp. 2-3. Specifically, the Order from the February 12 conference required the following:  "[B]y no later than February 21, 2020, (1) Defendant shall file a motion to withdraw its Notice of Removal because the parties entered a binding stipulation that Plaintiff's damages do not exceed $75,000 and this Court does not have subject matter jurisdiction; or **in the alternative**, (2) Plaintiff shall file either (a) a notice advising the Court that she intends to proceed with her [First Motion], as filed, or (b) a motion to withdraw her [First Motion] without prejudice to refiling same after Defendant responds to the Court's *sua sponte* order regarding the amount in controversy, which will issue in due course if the Notice of Removal is not withdrawn." (emphasis in original).

[18] R. Doc. 5.

[19] R. Doc. 6.

[20] R. Doc. 11.

[21] R. Doc. 8, p. 1.

that it was "facially apparent" from the Petition that her claims exceed $75,000, the undersigned *sua sponte* raised the issue of whether the amount in controversy was met because it was neither facially apparent from the Petition, nor had Defendant established by a preponderance of the evidence that Plaintiff's claims likely exceed $75,000.[22]

The discussion regarding the amount in controversy during the September 1 conference and resulting Order is summarized as follows: As a basis for amount in controversy, the Notice of Removal relies on medical records that show multiple cervical disc bulges and a lumbar disc bulge and herniation, coupled with the failure to execute a stipulation that Plaintiff's damages do not exceed $75,000. However, in response to an interrogatory asking whether or not the amount in dispute exceeds $75,000 exclusive of interests and costs, the discovery responses provided by Plaintiff state that "Plaintiff's damages are undetermined at this time."[23] Additionally, the medical records show expenses totaling just over $9,900 through December 27, 2019.[24] Further the medical records contain a diagnosis of a "lumbar strain" on June 12, 2018.[25] As of June 25, 2018, Plaintiff's medical examination noted that she was presently using a combination of Flexiril and ibuprofen 800 mg "with good results."[26] While the medical records do indicate that an MRI revealed bulges and herniations,[27] later medical records indicate that if Plaintiff continued to improve, she would be "ready for release when she returns."[28] The final record submitted states that Plaintiff is "doing fairly well" with only "an occasional headache," and that she "wants to try to manage without additional more aggressive intervention."[29] This record was from a visit on January 14, 2019.

---

[22] R. Doc. 11.
[23] R. 1-3, p. 10.
[24] R. Doc. 1-3, pp. 19-21.  The records indicate they were printed in late December 2019.
[25] R. Doc. 1-3, p. 23.
[26] R. Doc. 1-3, p. 24.
[27] R. Doc. 1-3, pp. 26-28.
[28] R. Doc. 1-3, p. 35.
[29] R. Doc. 1-3, p. 36.

4

At the time of the September 1, 2020 conference, there was no evidence of medical expenses or lost wages that would make it likely the damages in this case exceed $75,000. To the contrary the only evidence submitted was boilerplate allegations of damages in the Petition,[30] medical expenses totaling only about $9,900 printed eighteen months after the accident, a final submitted treatment statement, dated more than a year before removal, that Plaintiff was having only an occasional headache and intended to avoid any aggressive treatment, and a failure to execute a binding stipulation.[31]

Defendant was ordered to file a memorandum and supporting evidence regarding the amount in controversy, and Plaintiff was ordered to respond to Defendant's memorandum by filing either: (1) a Notice stating that Plaintiff does not dispute that Defendant has established the jurisdictional requirements of 28 U.S.C. § 1332, or (2) a Motion to Remand based solely on a jurisdictional issue.[32]

### *Defendant's Memorandum Regarding the Amount in Controversy*

On September 11, 2020, Defendant filed its memorandum and supporting evidence regarding the amount in controversy (the "Memorandum").[33] Defendant contends that it is "clear" that the amount is controversy requirement is met here, based on (1) the allegations of damages in the Petition and Plaintiff's diagnosed injuries; (2) Plaintiff's medical expenses to date and the

---

[30] Plaintiff alleges "pain and suffering (past, present, future); mental anguish and emotional distress; loss of enjoyment of life; disability; medical expenses (past, present, and future); loss of wages; any and all other damages to be set forth at the time of trial of this matter." R. Doc. 1-1, p. 3. "Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of the damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test." *Davis v. JK & T Wings, Inc.*, No. 11-501, 2012 WL 278728, at *3 (M.D. La. Jan. 6, 2012), and cited cases.

[31] Courts have consistently held that failure to execute a binding stipulation is entitled to some weight but is not determinative of whether the amount in controversy is met. *See e.g., Williams v. Miss. Farm Bureau Cas. Ins. Co.,* No. 18-876, 2019 WL 4198629, at *4 (M.D. La. Aug. 20, 2019).

[32] R. Doc. 11. As Plaintiff's First Motion to Remand based on timeliness was withdrawn and more than thirty days had passed since removal, any procedural defects were waived. 28 U.S.C. § 1447(c).

[33] R. Doc. 12.

"likelihood of the Plaintiff's further medical treatment"; (3) damages awards in cases involving injuries similar to Plaintiff's injuries; and (4) Plaintiff's "refusal" to stipulate that her claims do not exceed $75,000.[34]

### *Plaintiff's Renewed Motion and the Parties' Arguments*

On September 21, 2020, Plaintiff filed the Renewed Motion.[35] She argues that remand is appropriate because Defendant has "failed to demonstrate, by a preponderance of the evidence, that at the present time the amount of damages sought in this case meets the $75,000 threshold for federal jurisdiction."[36] Specifically, while noting that Plaintiff "may need to obtain additional medical services of aggressive treatment in the future that would increase the amount of damages in this case," Plaintiff argues that the Court can only consider damages at the time of removal, and that Defendant cannot show that Plaintiff's damages at the time of removal satisfy the amount in controversy requirement. Plaintiff's argument is wholly premised on the rationale underlying the Court's September 1 *sua sponte* Order.[37]

Defendant opposes the Renewed Motion.[38] Defendant argues that it is "clear" that the amount in controversy is met here, asserting many of the same bases as before. First, Defendant argues that Plaintiff's diagnosed injuries, as reflected in her medical records, and damages awards in cases involving similar injuries show that the amount in controversy requirement is satisfied.[39] Plaintiff's medical records indicate (1) that she is complaining of headaches and injuries to her neck, back, and left ankle; (2) that she has been diagnosed with "a total of four (4) disc bulges and

---

[34] *Id*.

[35] R. Doc. 13.

[36] *Id*. at ¶ 8.

[37] *See id*. at p. 4 ("[A]s the Court has noted in its Report and Order of September 1, 2020, plaintiff's present medical records do not presently contain evidence of injury, medical expense or lost wages 'that would make it likely the damages in this case exceed $75,000.' The court noted that the records revealed current medical expenses of approximately $5,000…").

[38] R. Doc. 14 (the "Opposition"). The arguments in Defendant's Opposition mirror those in its Memorandum.

[39] *Id*. at pp. 1-3.

one (1) herniation"; (3) that she underwent physical therapy for her injuries; and (4) that she has been recommend for, but not received, "left C2 and C3 nerve blocks." Considering these injuries, Defendant argues that the damages awards in *Hebert v. Boesch*,[40] *Zimmerman v. Progressive Sec. Ins. Co.*,[41] *Pannell v. Encompass Ins. Co.*,[42] and *Saulny v. Tricou House, L.L.C.*[43] establish that Plaintiff's claims are likely to exceed $75,000.00, exclusive of interest and costs.[44]

Second, Defendant contends that particular emphasis should be placed on Plaintiff's failure to stipulate that her damages do not exceed $75,000 and the related circumstances.[45] Defendant argues that Plaintiff's refusal to stipulate, combined with (1) Plaintiff's argument in the First Motion that it was "facially apparent" that Plaintiff's claims satisfy the amount in controversy requirement, such that service of the Petition triggered Defendant's 30-day removal period, and (2) Plaintiff's evasive response to a discovery request asking her to quantify her damages, are factors that weigh heavily in favor of finding that the amount in controversy requirement is met here.[46]

Finally, Defendant argues that Plaintiff's incurred medical expenses to date of $9,905.00 and statements by Plaintiff that she "may need to obtain additional medical services or aggressive treatment in the future" further show that Plaintiff's claims exceed $75,000.[47]

---

[40] 2015-1791 (La. App. 1 Cir. 6/3/16); 194 So.3d 798.
[41] 49,982, 49,983 (La. App. 2 Cir. 8/12/15); 174 So.3d 1230.
[42] 06-1601 (La. App. 3 Cir. 5/2/07); 956 So.2d 152.
[43] 02-1424 (La. App. 4 Cir. 2003); 839 So.2d 392.
[44] R. Doc. 14, pp. 1-3.
[45] *Id*. at pp 3-4.
[46] *Id*. *See also* R. Doc. 12-2 (Plaintiff's discovery responses), at Answer to Interrogatory No. 22; and R. Doc. 12-4 (e-mail and letter correspondence regarding Plaintiff's refusal to stipulate).
[47] *Id*. at pp. 4-5.

## II.    LAW AND ANALYSIS

### A.    Legal Standards

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[48] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[49]  Remand is proper if at any time the court lacks subject matter jurisdiction.[50] The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[51]

The burden of proof is on the removing defendant to establish that the amount in controversy has been satisfied.[52] The defendant may make this showing by either (1) demonstrating that it is facially apparent from the Petition that the claims are likely above $75,000, or (2) setting forth facts in controversy that support a finding of the jurisdictional minimum.[53] If the defendant can produce evidence sufficient to show by a preponderance, *i.e.*, summary judgment-type evidence, that the amount in controversy exceeds the jurisdictional threshold, the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed $75,000.[54] The jurisdictional facts that support removal must be judged at the time of removal.[55]

---

[48] 28 U.S.C. § 1441(a).
[49] 28 U.S.C. § 1332(a)(1).
[50] *See* 28 U.S.C. § 1447(c).
[51] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).
[52] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).
[53] *Id., and see Richard v. Georgia Gulf Lake Charles, LLC,* No. 07-0050, 2007 WL 2319804, *7 (W.D. La. Aug. 10, 2007) *citing De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1412 (5th Cir. 1995).
[54] *See, e.g., Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 869 (5th Cir. 2002); *De Aguilar,* 47 F.3d at 1412.
[55] *Kimble v. America First Ins. Co.*, No. 14-67, 2014 WL 1761556, at *2 (M.D. La. Apr. 28, 2014), *citing Gebbia,* 233 F.3d at 883 and *Womack v. National Union Fire Insurance Company,* No. 16-13127, 2016 WL 4728096, at *1 (E.D. La. Sept. 12, 2016).

Since the parties are of diverse citizenship, which is undisputed, the only issue with regard to the Court's exercise of subject matter jurisdiction is whether the amount in controversy has been satisfied under 28 U.S.C. § 1332(a).

**B.    It is Not Facially Apparent from the Petition that the Amount in Controversy is Met**

The September 1 *sua sponte* Order was issued because it was not facially apparent from the Petition that the amount in controversy is likely to exceed $75,000.[56] The only references in the Petition to damages sought are as follows:

- "Defendant is indebted unto the petitioner for such damages as are necessary and reasonable in the premises, with legal interest thereon from the date of judicial demand until paid, and for all costs of these proceedings for the following …."[57]

- "This fall by petitioner, all of which was result [sic] of defendant's negligence, caused extremely painful and permanent injuries to her person."[58]

- "As a direct and proximate result of defendant's negligence, petitioner Barbara McClay suffered the following non-exclusive damages

  A)    Pain and suffering (past, present, future);
  B)    Mental anguish and emotional distress;
  C)    Loss of enjoyment of life;
  D)    Disability;
  E)    Medical expenses (past, present, and future);
  F)    Loss of wages;
  G)    Any other damages to be set forth at the time of trial of this matter;"[59]

---

[56] R. Doc. 11, p. 4 ("However, because it is not facially apparent that the amount in controversy is met and because the Defendant has not established by a preponderance of the evidence that Plaintiff's claims likely exceed $75,000, the Court *sua sponte* raises the issue of whether the amount in controversy is met."). The Petition contains only a short boilerplate list of general damages. R. Doc. 1-1, ¶ 5.
[57] R. Doc. 1-1, ¶ 1.
[58] R. Doc. 1-1, ¶ 3.
[59] R. Doc. 1-1, ¶ 5.

It is not facially apparent from these boilerplate allegations that the amount in controversy is met.[60]

### C.  Defendant has Not Met Its Burden of Establishing that the Amount in Controversy Likely Exceeds $75,000, Exclusive of Interest and Costs

Despite the opportunity to provide additional evidence, Defendant has also failed to establish by a preponderance of the evidence that the amount in controversy is met. Defendant's Memorandum and Opposition rely primarily on the same evidence cited in the Notice of Removal: the boilerplate allegations of damages in Plaintiff's Petition; medical expenses totaling only about $9,900 printed eighteen months after the accident, including a final submitted treatment statement that Plaintiff was having only an occasional headache and intended to avoid any aggressive treatment; and Plaintiff's failure to execute a binding stipulation. This information collectively fails to establish that Plaintiff's damages in this case will likely exceed $75,000, exclusive of interest and costs.

Defendant still mainly relies on Plaintiff's medical records[61] which do not show that Plaintiff's claims are likely to exceed $75,000, exclusive of interest and costs. First, the medical records relied on by Defendant in its Memorandum and Opposition are identical to those attached to the Notice of Removal,[62] which were already determined insufficient to meet the amount in controversy.

Second, these medical records reflect that Plaintiff received only about eight months of

---

[60] See *Davis*, 2012 WL 278728, at *3, and *Saxon v. Thomas,* No. 06-2339, 2007 WL 1115239, at *3 (W.D. La. April 12, 2007) ("If the scant facts set forth in this petition, combined with a prayer for certain categories of damages (prayed for in almost every personal injury case of any magnitude) were deemed adequate to allow federal diversity jurisdiction, there would be very few slip and fall, car accident or other personal injury cases that would not meet the amount in controversy requirement. Congress's imposition of a $75,000 threshold for removal of such cases would be eviscerated. *See also, Guillory v. Chevron Stations, Inc.,* 03-2385, 2004 WL 1661201 (E.D. La. 2004) (distinguishing *Gebbia* and remanding knee injury case despite claims for several categories of damages).").

[61] *See* R. Doc. 1, pp. 3-5; R. Doc. 1-3, pp. 19-36 (pp. 29-32 appear to relate to someone other than Plaintiff); R. Doc. 12; R. Doc. 12-1; R. Doc. 13, pp. 1-5. To a lesser extent, Defendant relies of Plaintiff's discovery response (R. Doc. 12-2) and correspondence with Plaintiff's counsel regarding the proposed stipulation (R. Doc. 12-4).

[62] *Compare* R. Doc. 12-1 and R. Doc. 1-3, pp. 19-29, 33-36.

conservative treatment for her pain and injuries—several cervical and lumber disc bulges and a

lumbar disc herniation, along with headaches and neck, back, and ankle pain.[63] Although injections

were recommended for Plaintiff's injuries, she apparently declined them.[64] The treatment included

only eight visits with Dr. Johnston, an orthopedic surgeon, and an unknown number of chiropractic

and/or physical therapy visits, for which Plaintiff only incurred about $9,900 in combined medical

expenses. This amount of past medical expenses falls far short of establishing that Plaintiff's

claims will exceed the jurisdictional minimum, especially given that the accident occurred May

23, 2018 and the Notice of Removal (when these records were first submitted) was not filed until

January 29, 2020—more than eighteen months later.[65]

---

[63] R. Doc. 12-1.

[64] At Plaintiff's third visit, Dr. Johnston recommended "[l]eft C2 and C3 nerve blocks." R. Doc. 12-1, p. 4. However, at Plaintiff's next visit, Dr. Johnston noted that Plaintiff's "neck and low back symptoms have been improving" and the blocks "will be scheduled if needed." *Id.* at p. 5. At a later visit, Dr. Johnston noted that while Plaintiff's "[l]eft cervical and low back pain continues," she has seen "some improvement" through physical therapy. *Id.* at p. 8. Accordingly, Dr. Johnston noted that nerve blocks and/or "C7-T1 interlaminar epidural steroid injection and bilateral L5-S1 facet joint injections" may be scheduled "if needed." *Id.* Further, at Plaintiff's eighth and final visit, Dr. Johnston noted that Plaintiff is "doing fairly well" with only an "occasional headache." *Id.* at p. 11. He also notes that Plaintiff "wants to try to manage without additional more aggressive intervention." *Id.*

[65] This Court has declined to find that the amount in controversy is met on similar cervical and/or lumbar injuries. *See, e.g., Cole v. Mesilla Valley Transportation*, No. 16-841, 2017 WL 1682561, at *5 (M.D. La. Mar. 15, 2017), *report and recommendation adopted*, No. 16-841, 2017 WL 1684515 (M.D. La. May 1, 2017) (amount in controversy not satisfied when Plaintiff had several disc bulges, was recommend for an epidural steroid injection, and had incurred $7,318 in past medical expenses at the time of removal) *and see id*.: "Several recent federal court decisions have held that the removing defendant did not meet its burden of providing the amount in controversy where the plaintiff suffered disc bulging or herniation without operation, and incurred less than $15,000 in medical expenses at the time of removal. *See Barrow v. James River Ins. Co.*, No. 16-15967, 2017 WL 656725 (E.D. La. Feb. 15, 2017) (amount in controversy not satisfied where plaintiff incurred $4,600 in medical expenses at time of removal, and received physical therapy and an epidural steroid injection to treat disc herniations at L3-4, L4-5 and L5-S1); *McCain v. Winn-Dixie Montgomery, LLC*, No. 16-1546, 2016 WL 2908418 (E.D. La. May 19, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $6,384 in medical expenses at time of removal, and medical records indicated annular cervical bulges at C4-5, C5-6, and C6-7; exacerbation of several preexisting lumbar disc herniations; and other injuries to wrist and hip); *Robichaux v. Wal-Mart Stores, Inc.*, No. 16-1786, 2016 WL 1178670 (E.D. La. Mar. 28, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $7,555 in medical expenses at time of removal, and MRI demonstrated that the plaintiff had a "mild bilateral facet arthropathy at L3-4, bilateral facet arthropathy and a circumferential broad based posterior disc bulge with resultant mild central canal stenosis and biltateral foraminal narrowing at L4-5, and mild bilateral facet arthropathy at L5-S1"); *Powell v. Cadieu*, No. 15-4839, 2016 WL 1042351 (E.D. La. Mar. 16, 2016) (amount in controversy not satisfied where plaintiff incurred $1,948 in medical expenses at time of removal, and MRI tests indicated plaintiff had "lumbar facet arthrosis at L3-4 and L4-5 with bulging at L3-4 with annulus fibrosus tear with bulging at L5-S1 and L2-3 and L4-5"); *Arnold v. Lowe's Home Centers, Inc.*, No. 10-4454, 2011 WL 976512 (E.D. La. Mar. 16, 2011) (amount in controversy not satisfied where slip-and-fall plaintiff incurred approximately $12,000 in medical expenses at time of removal, and suffered a herniated disc at C3-4 for which epidural steroid injections were prescribed); *cf. Thibodeaux*, 2016 WL 4055660 (M.D. La. July

There is also no recommendation for future or continuing treatment, much less a surgical recommendation for Plaintiff, and no prognosis of permanent disability or injury. In fact, Dr. Johnston's records indicate that as far back as August 2018—just three months post-accident—Plaintiff stated her "neck and low back symptoms have been improving."[66] According to the November 19, 2018 record, Plaintiff "states that her back symptoms have improved and are no longer really problematic," although she was still complaining of headaches.[67] By January 14, 2019, the date of the last record provided, plaintiff was reportedly "doing fairly well"…[with] only…an occasional headache" and "want[ed] to try to manage without additional more aggressive intervention," and Dr. Johnston released her to be seen "as necessary."[68] The most these records show is that Plaintiff had some complaints, allegedly related to this accident, which improved over the course of eight months such that she no longer required continuous treatment. The documentation of expenses associated with this treatment shows charges of approximately $9,900.[69] Under these facts, it is unlikely that Plaintiff has a significant claim for future medical expenses (if any). Nor has Defendant submitted any summary-judgment-type evidence regarding Plaintiff's past and/or future lost wages, if any.[70]

While Defendant correctly notes that this Court has "recognized that a herniated disc without surgery may exceed $75,000," Defendant's reliance on those cases is misplaced.[71] First,

---

8, 2016) (denying remand where "defendants correctly pointed out that the medical bills show consistent treatment with charges in excess of $45,000" and "[t]he medical records provided by the defendants similarly show that [the Plaintiff] had preexisting injuries in his neck and back that were aggravated by the ... accident.")."
[66] R. Doc. 1-3, p. 26.
[67] R. Doc. 1-3, p. 35.
[68] R. Doc. 1-3, p. 36.
[69] R. Doc. 1-3, pp. 19-21.
[70] See Cole, 2017 WL 1682561 at *6 ("…to the extent Mr. Cole is seeking recovery for lost wages, ATTIC has only established that he was on short term disability for 3 months from his position as a warehouse worker. ATTIC does not submit any summary judgment-type evidence to support the calculation of a numerical figure for Mr. Cole's past and/or future lost earnings.")
[71] See R. Doc. 13, at p. 2 (citing Thibodeaux, 2016 WL 4055660, and Thomas v. Louis Dreyfus Commodities, LLC, No. 15-394, 2016 WL 1317937 (M.D. La. Mar. 11, 2106)).

although *Thibodeaux* involves injuries similar to Plaintiff's, *Thibodeaux* is distinguishable because the plaintiff in that case had $45,000 in medical expenses[72] and there was an affidavit submitted attesting to a pre-removal settlement demand far in excess of the jurisdictional threshold.[73] Here, Plaintiff's medical expenses are less than one-fourth of those incurred by the *Thibodeaux* plaintiff, and Defendant has not indicated whether Plaintiff has made any settlement demands in this case. Second, while this Court noted in *Thomas* that courts have found the amount in controversy satisfied when a plaintiff alleged he/she suffered herniated discs but not undergone surgery, this Court also explained that "[w]hether or not a herniated disc satisfies the amount in controversy often turns on whether surgery is recommended."[74] Accordingly, courts have found the lack of a recommendation for surgery to be a significant factor, if not dispositive, in determining whether a plaintiff seeking damages including those for a herniated disc meets the amount in controversy requirement when balanced with other factors in the record.[75] Further, a general review of quantum cases demonstrates that general damages awards for multiple bulging discs often (if not usually) fail to exceed $30,000-$45,000, even where the plaintiff is actually treated with steroid injections.[76]

---

[72] *Thibodeaux*, 2016 WL 405660, at *4.

[73] *Thibodeaux*, 2016 WL 4055660, at *2 ("Defendants also submitted an affidavit from a GEICO claims representative, which provides that during a telephone call on January 27, 2016, [the plaintiff] stated he would accept $1,000,000 from GEICO to settle his claim.").

[74] *Thomas*, 2016 WL 137937 at *4. *See also Robinson v. Kmart Corp.*, No. 11-12, 2011 WL 2790192, at *4 n.4 (M.D. La. Apr. 28, 2011), *report and recommendation adopted*, 2011 WL 2937952 (M.D. La. July 14, 2011).

[75] *See, e.g.*, *Hebert v. Hanco Nat. Ins. Co.*, No. 07-362, 2009 WL 255948, at *4-5 (M.D. La. Feb. 3, 2009) (amount in controversy not satisfied where plaintiff "suffers from a herniated disc, without any recommendation for surgery" and the plaintiff "continues to work, continues to engage in activities of daily living, and does not seek damages for mental anguish"); *Espadron v. State Farm Mut. Auto. Ins. Co.*, No. 10-53, 2010 WL 3168417 (E.D. La. Aug. 9, 2010) (amount in controversy not satisfied where plaintiff in car crash suffered a "herniated cervical disc [or] segmental cervical instability" and a "herniated lumbar disc [or] segmental lumbosacral instability" and was a "potential surgical candidate" and plaintiff stipulated that his damages did not exceed $50,000).

[76] *See, e.g.*, *Clement v. Carbon*, 153 So. 3d 460, 464 (La.App. 5 Cir. 2014) (affirming award of $30,000 in general damages for bulging disc at C5-6); *Moody v. Cummings*, 37 So. 3d 1054, 1062 (La.App. 4 Cir. 2010) (affirming award of $45,000 in general damages for minimal bulging at C2-3, C4-5, and C5-6, which appeared to be degenerative, and not traumatic in origin, and pain for a period of 4 years); *Mixter v. Wilson*, 54 So. 3d 1164, 1169 (La.App. 5 Cir. 2010) (increasing award for general damages to $30,000 where MRI revealed two ruptured discs and one bulging disc, and plaintiff was treated with epidural steroid injections); *DiMaggio v. Williams*, 900 So. 2d 1014, 1019 (La.App. 5 Cir.

Moreover, Defendant's additional authority on quantum is not persuasive because it is factually distinguishable. In *Hebert v. Boesch*,[77] the plaintiff was injured in rear-end motor vehicle collision, the force of which "shoved" the bed of plaintiff's truck forward, breaking the back window and driver's seat. Plaintiff suffered injuries to his neck, back, shoulders, chest, and shins. His medical records introduced at trial showed that "he had never suffered with any type of chronic pain or treated with any doctors for pain associated with his back, neck, or shoulders." Plaintiff treated with his primary care physician within hours of the collision; he also treated with a chiropractor and an orthopedic surgeon, who diagnosed plaintiff with "two disc bulges, one in [plaintiff's] neck at C6-7, with cervical radiculopathy, and a mild one in his back at L4-5." The orthopedic surgeon recommended additional "conservative treatment of physical therapy and medication, or epidural steroid injections in [plaintiff's] cervical spine." Plaintiff elected to continue with conservative treatment, and he did not pursue the epidural steroid injections. All told, plaintiff's medical records showed "conservative treatment for his accident-related injuries for approximately twenty months" and incurred past medical expenses of $15,290.98. During the bench trial, plaintiff testified that while he has "tried to resume his normal activities as best as he could" and only experienced one "flare up of pain," he is still "fearful" and "nervous" of future flare ups, so he is "careful when he does all activities…[and] continues to do physical therapy exercises at home." Largely based on plaintiff's testimony and medical records, the trial court awarded plaintiff $75,000 in general damages. In contrast, there is no evidence here that Plaintiff has continued treatment beyond January 2019 (*i.e.*, about eight months post-accident), that she

---

2005) (affirming general damages award of $15,000 for two bulging discs); *but see Locke v. Young*, 42,703 (La.App. 2 Cir. 2007), 973 So.2d 831, 845 (reducing award of $150,000 in general damages to $75,000 for two bulging discs notwithstanding that trial testimony indicated surgery was a "distant probability" and the plaintiff testified he had low back pain daily).

[77] 194 So.3d 798.

remains in continuous pain, that she is prevented from engaging in life activities, or is nervous and exercises caution when engaging in these activities due to her injuries.

In *Zimmerman v. Progressive Sec. Ins. Co.*,[78] the plaintiff, who was driving a Monte Carlo, was injured during a motor vehicle collision with a Hummer. Plaintiff and the driver of the Hummer had a "complicated personal relationship prior to [the collision]," which resulted in a "heated argument" and a "physical altercation" after the collision. After the altercation was broken up, both drivers returned to their vehicles before the driver of the Hummer "proceeded to ram the Hummer into the Monte Carlo three times." Plaintiff was transported to the hospital, where she received treatment for injuries to her face, eye, back, knee, and leg. Plaintiff treated with an ophthalmologist for her eye injury and her eye injury resolved in four weeks. She treated with an orthopedic surgeon for about five months related to "cervical and lumbar spinal pain, bilateral knee pain, and pain in the left hand," and she was diagnosed with soft tissue injuries, mild left C6 and C7 neural foraminal narrowing, and a minimal disk bulge at C5-6. She attended eleven physical therapy sessions over three months. Notably, after the incident, plaintiff was treated by a psychiatrist, who diagnosed her with "depression and post-traumatic stress disorder." The psychiatrist's reports were introduced at trial and showed that plaintiff was "having trouble sleeping, was no longer eating, had lost a lot of weight, was experiencing nightmares related to the incident, and had general feelings that she was losing herself and no longer enjoying life." Further, the plaintiff sought treatment at a local hospital for a "possible suicide attempt brought on by depression and the use of [an antidepressant]." After trial, plaintiff was awarded $12,819.50 in past medical expenses and $70,000 in general damages.[79] Conversely, beyond Plaintiff's

---

[78] 174 So.3d 1230.

[79] *Id*. at 1241-42. The general damages award included $20,000 for past physical pain and suffering, $20,000 for past mental anguish, $10,000 for future mental anguish, and $20,000 for loss of enjoyment of life. *Id* at 1242. Additionally, in affirming the trial court's award, the appellate court noted that plaintiff's physical injuries were "minor" but

boilerplate "mental anguish and emotional distress" allegation, there is no evidence regarding the nature or extent of any mental injuries suffered, nor is there anything else in the record suggesting that Plaintiff has treated with a psychiatrist for any mental anguish or distress.

In *Pannell v. Encompass Ins. Co.*,[80] the plaintiff, a person with a "long history of back problems since 1979 for which she sought active medical treatment with an orthopaedist, physical therapist, and chiropractor,"[81] was injured in a motor vehicle collision. After the collision, plaintiff complained about pain in her back, neck, and shoulders, and she treated intermittently with a host of doctors for about one year before undergoing a lumbar discectomy at L4-5. The trial court awarded plaintiff "$195,000 in general damages for soft tissue injuries to [plaintiff's] neck and shoulder with an aggravation of a pre-existing low back condition." However, the appellate court reduced plaintiff's general damages award to $90,000, finding that to be "the highest reasonable award for [plaintiff's] injuries" after "reviewing prior awards in similar cases." Notably, for purposes of this case, the "similar cases" referenced by the *Pannell* court included a $50,000 general damage award where the plaintiff had two cervical fusions and residual pain; a $50,000 general damage award for permanent aggravation of a pre-existing degenerative arthritic condition; and a $50,000 general damage award for aggravation of a degenerative condition not requiring surgery but resulting in continuing lifetime symptoms.[82]

Finally, while Plaintiff refused to enter into the stipulation proffered by Defendant that her damages were less than $75,000,[83] that information alone is not enough to establish the

---

emphasized the intentional nature of the collision and its resulting mental impact on plaintiff, including "intense depression" and "detrimental alterations to her life and an inability to participate in the activities formerly enjoyed prior to the injury."

[80] 956 So.2d 152.

[81] The plaintiff testified that her prior back problems included "at least one, maybe two, herniated discs and some degenerative changes in her back prior to the subject accident." *Id*. at 155.

[82] *Id*. at 157-58, and cases cited there.

[83] R. Doc. 1-3, pp. 1-4.

jurisdictional minimum.[84] Defendant's frustration regarding the fact that Plaintiff did not sign the proposed stipulation is understandable considering that Plaintiff has made diametrically opposed claims regarding the amount in controversy, beginning with the claim that it is "facially apparent" from the Petition that her claims exceed the amount in controversy, before settling on her current assertion that Defendant cannot show by a preponderance of the evidence that the amount in controversy requirement is satisfied. Regardless, as the party seeking to have this Court exercise its limited subject matter jurisdiction, the burden remains Defendant's. Additionally, it is not clear from the evidence submitted whether refusal to stipulate was because Plaintiff's counsel (1) was unsure of the extent of her injuries, (2) disagreed with the specific language in the proposed stipulation, (3) believes such a stipulation "would breach his professional and ethical duties to his client by artificially limiting the damages she may recover" because "it may turn out that [P]laintiff needs further treatment or surgery which could increase damages beyond the $75,000," or (4) actually believes Plaintiff's injuries are likely to exceed $75,000. Based on the referenced correspondence and discovery responses, however, it appears that Plaintiff's counsel's primary motivation was some combination of the first three.[85] At bottom this is a court of limited subject

---

[84] *See Cuillier v. Allstate Ins. Co.*, No. 07-5841, 2007 WL 4591229, at *1 (E.D. La. Dec. 28, 2007); *Adams v. Hanover Ins. Co.*, No. 07-6827, 2007 WL 4591230, at *1 (E.D. La. Dec. 28, 2007); *Manuel v. American Western Home Ins. Co.*, No. 07-1883, 2007 WL 4570896, at *1 (W.D. La. Dec. 20, 2007).

[85] *See, e.g.*, R. Doc. 12-2, p. 8, at Answer to Interrogatory No. 22 (stating "Plaintiff's damages are undetermined at this time" in response to an interrogatory asking Plaintiff to "state the specific amount [she seeks] as damages," including whether they are in excess of $50,000 and/or $75,0000); R. Doc. 12-4, pp. 1-2 (email to Defendant's counsel memorializing a discussion with Plaintiff's counsel, wherein one of Plaintiff's counsel indicated his belief that Plaintiff's other counsel will not sign the stipulation); *id.* at p. 4 (correspondence from Plaintiff's counsel to Defendant's counsel acknowledging receipt of the proposed stipulation and explaining that "Plaintiff does not agree to those terms and will not entertain any further discussion related to the stipulation"); R. Doc. 13, p. 3, ¶6 (explaining Plaintiff's counsel's belief that stipulating that Plaintiff's damages do not exceed $75,000 "would breach his professional and ethical duties to his client" because "it may turn out that [P] needs further treatment or surgery," even though "[P]laintiff's medical records and other information presently reveal that her damages may not exceed $75,000). Despite Plaintiff's counsel's belief, execution of such stipulations, while certainly not required, are commonplace. *See, e.g., Jackson v. Perez*, No. 13-504, 2013 WL 5741757, at *2 (M.D. La. Oct. 22, 2013) and cases discussed there. Indeed, the La. Code Civ. P. art. 893 specifically requires a statement in the Petition as to whether damages are sufficient to meet the federal jurisdictional amount. Although federal courts have found the absence of such a statement is not controlling as to whether the amount in controversy is met, such a statement certainly would have helped resolve this issues in this case more quickly and necessarily would have required Plaintiff's counsel to

matter such that a case is presumed to lie outside its jurisdiction.[86] For that reason, the removal statute is strictly construed "and any doubt as to the propriety of removal should be resolved in favor of remand."[87] Eight months of conservative treatment resulting in $9,900 in past medical expenses with no evidence of treatment for a year pre-removal and a failure to stipulate is simply not sufficient to establish that Plaintiff's damages in this case exceed $75,000, exclusive of interest and costs.

## III.    RECOMMENDATION

**IT IS RECOMMENDED** that the Renewed Motion to Remand on Jurisdictional Grounds,[88] filed by Plaintiff Barbara McClay, be **GRANTED**, and that this matter be remanded to the Eighteenth Judicial District Court, Parish of Iberville, Louisiana, for lack of subject matter jurisdiction under 28 U.S.C. § 1332(a). To the extent any portion of the motion can be construed as a request for costs and attorneys' fees under 28 U.S.C. § 1447(c), **IT IS RECOMMENDED** that such request be **DENIED**.

Signed in Baton Rouge, Louisiana, on June 11, 2021.



**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

confer with is client and obtain the information necessary to make such a determination. In addition to his obligations to his client, Plaintiff's counsel also has obligations under the Federal Rules of Civil Procedure to the Court and to opposing counsel. *See* Fed. R. Civ. P. 1 (explaining that the Rules "should be construed, administer, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding") and Fed. R. Civ. P. 11 (explaining that when an attorney signs and presents a pleading, motion, or other paper to the court, they are certifying (1) that it is not being presented for any improper purpose, including to "cause unnecessary delay, or needlessly increase the cost of litigation"; (2) that the factual contentions have evidentiary support..."; and (3) that denials of factual contentions are "warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."). Given the inconsistencies in Plaintiff's position regarding amount in controversy in this case, to the extent any portion of Plaintiff's Renewed Motion can be construed as a request for costs and attorneys' fees under 28 U.S.C. § 1447(c), it is recommended that such request be denied. Review of the record as a whole—namely, information relating to Plaintiff's refusal to stipulate and her inconsistent positions regarding the amount in controversy explained above—shows that an award of costs and attorneys' fees is not warranted in this case.

[86] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

[87] *Gutierrez v. Flores,* 543 F.3d 248, 251 (5th Cir. 2008) (citing *In re Hot–Hed, Inc.,* 477 F.3d 320, 323 (5th Cir. 2007)).

[88] R. Doc. 13.